UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY METH,

        Plaintiff,                             CASE NO.: 2:08-CV-11589

vs.

KWAME KILPATRICK, JIMMY
ALEBRIA, ALEBRIA/PRIME
PARKING, CITY OF DETROIT, and
DOES 1-9,                              DISTRICT JUDGE DAVID M. LAWSON
                                                       MAGISTRATE JUDGE STEVEN D. PEPE

        Defendants.
_____/

**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER (Dkt. # 2)
AND GRANTING DEFENDANTS' MOTIONS TO DISMISS (Dkts. #22 and #23)**

**I.    Introduction**

On March 14, 2008, Plaintiff, Billy Meth, filed a Complaint against 14 individuals including former Detroit Mayor Kwame Kilpatrick and 9 John/Jane Does (Dkt. # 1). Plaintiff's Complaint contains six counts[1] which allege that property allegedly obtain by Plaintiff from the City of Detroit through adverse possession, was taken from him without due process or just compensation in violation of 42 U.S.C. §§ 1983, 1985. *Id*. at 2. Plaintiff also asserts that his equal protection rights were violated and that Defendants' actions violated the Racketeer Influence Corrupt Practices Act. *Id*. at 16, 22.

---

[1] While including six counts, it is not clear that Plaintiff's Complaint provides six discrete causes of action.

1

On March 14, 2008, Plaintiff filed a Motion for Temporary Restraining Order ("TRO") (Dkt. # 2). Plaintiff's Motion for Temporary Restraining Order seeks to (1) prevent Defendants from entering the lots adjoining 124 Henry Street, (2) prevent Defendants from locking and denying Plaintiff use of the property, (3) overturn seizure of property, (4) order Defendants removed from property, (5) prevent Defendants from conducting business on the property, (6) prevent Defendants from taking actions perfecting interest in the property(s) in question, (7) order removal of all locks and fences placed around property by Defendants, (8) require escrow of all funds received by Defendants during the operation of the property and (9) order protection of Plaintiff from all physical and verbal assault at the said property (Dkt. # 2, p. 2,3).

Defendants City of Detroit and Kilpatrick ("Detroit Defendants") filed a response to Plaintiff's motion for TRO on May 15, 2008 (Dkt. # 10). Defendants Jimmy Alebria and Alebria/Prime Parking ("Alebria Defendants") also filed a response to Plaintiff's motion for TRO on the same day (Dkt. # 12).

A May 28 hearing was set for Plaintiff's motion for a TRO. The hearing was cancelled due to the inability of Plaintiff's counsel to locate his client or any witnesses. Repeated attempts have been made by this Court to reschedule the hearing to no avail because Plaintiff has not contacted this Court requesting a follow-up date for a hearing on his motion for TRO.

On June 6 the Detroit Defendants filed a motion to dismiss .(Dkts. #22). On June 26 the Alebria Defendants filed a motion to dismiss with a brief in concurrence with the Detroit Defendants' motion to dismiss (Dkts. #23). Plaintiff failed to respond to either motion.

The Court finds that the facts and legal arguments are adequately present in the papers and the decision process would not be significantly aided by oral arguments; therefore, the

motion will be resolved on the briefs submitted pursuant to E.D. Mich. L.R. 7.1(e)(2).

All pretrial matters have been referred to the undersigned (Dkt. # 5), and for the reasons discussed below it is recommended that Plaintiff's motion for a TRO be denied and Defendants' motions to dismiss be granted.

## II.     Facts

Plaintiff is a Detroit resident who on or about 1987 began to care for some vacant lots located on Henry Street between Park and Clifford streets in the City of Detroit ("the Property") (Dkt. # 1, p. 4). Plaintiff claims that he "took care of the lots for more than 20 years" having cleaned, fenced and guarded these lots which "were basically manicured fields." (Dkt. # 4, p. 2, 4).

After Comerica Park opened nearby in 2000, Plaintiff parked cars on the Property for profit (Dkt. # 1, p. 4). In order to comply with the city ordinance, Plaintiff obtained a background felony check and displayed the "parking lot license/decal/plate, photo ID, and badge" as all who engage in the parking lot for hire business are allegedly required to do. *Id.* Plaintiff claims that his use and care of the Property were open, notorious and continuous until mid-March 2008. At that time, the 2008 Major League Baseball season commenced and Defendants removed Plaintiff's locks from the Property and "immediately issued to the chosen defendant family Alebria, parking lot licenses and credentials absent the required background checks and waiting period." *Id* at 5.

Plaintiff claims that the "Alebria conglomerate"[2] was provided use of the Property without an open competitive bidding process being held. *Id*. at 6. Further, Plaintiff claims that

---

[2] "Jimmy" Alebria, Alebria/Prime Parking will collectively be referred to as "Alebria Defendants."

3

the Alebria Defendants are not required to comply with Detroit City regulations requiring background and traffic clearance checks or to display picture identification required of other parking lot providers (Dkt. # 4, p. 2, 3).

## III. Analysis

A. Standards of Review

### 1. Injunction and Temporary Restraining Order

Requests for preliminary injunctive relief are governed by Fed. R. Civ. P. 65. In reviewing such a request, a district court must balance the following four factors. These are whether:

- a. the movant has shown a strong or substantial likelihood or probability of success on the merits;
- b. the movant has shown irreparable injury;
- c. the preliminary injunction could harm third parties; and
- d. the public interest would be served by issuing the preliminary injunction.

*Gaston Drugs, Inc. v. Metropolitan Life Insurance Co.*, 823 F.2d 984, 988 (6th Cir. 1987).

These are "factors to be balanced, not prerequisites that must be met." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Furthermore, "[t]he grant of a preliminary injunction is a drastic and unusual judicial measure" that should only be provided upon a "strong showing of need." *Marine Transp. Lines, Inc. v. Lehman*, 623 F. Supp. 330, 334-35 (D.D.C. 1985) (citing *Yakus v. United States*, 321 U.S. 414, 440 (1944)).

Regarding a temporary restraining order:

> a temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result *to the applicant* before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's

> attorney certifies to the court in writing the efforts, if any, which
> have been made to give the notice and the reasons supporting the
> claim that notice should not be required.

Federal Rules of Civil Procedure Rule 65 (emphasis supplied).

### 2. **Subject Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1)**

When subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), plaintiff bears the burden of proving jurisdiction in order to survive the motion. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). There are two types of challenges to subject matter jurisdiction which may be made under Federal Rule of Civil Procedure 12(b)(1): "(1) a facial attack that challenges the sufficiency of the allegations of jurisdiction in the pleadings on their face; and (2) a factual attack that challenges the truth of the jurisdictional facts alleged in the pleadings." *Community Treatment Ctrs., Inc. v. Westland*, 970 F. Supp. 1197, 1205 (E. D. Mich. 1997) (citations omitted).

When reviewing a motion which makes a facial attack to subject matter jurisdiction under Rule 12(b)(1), the Court must accept the well-pleaded allegations in the Complaint as true and draw all reasonable inference in favor of the plaintiff. *Id.* at 1205-06. *See also DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004). In examining a factual challenge to subject matter jurisdiction, there is no presumption of truthfulness and the court is free to weigh the evidence in order to satisfy itself whether is has the power to hear the case. *RMI Titanium Co. v. Westinghouse Elec. Corp*., 78 F.3d 1125, 1135 (6th Cir. 1996). The court may examine evidence of its power to hear the case and may make factual findings to determine if it has subject matter jurisdiction. When there has been a factual challenge to subject matter jurisdiction, the legal conclusions of the district court are reviewed *de novo*,

while the factual findings are reviewed for clear error. *Keller v. Central Bank of Nigeria*, 277 F.3d 811, 815 (6th Cir. 2002).

### 3. **Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007), *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *Twombly*, 127 S.Ct. at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

"However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. V. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1994). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). *See also*, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

*Conley v. Gibson*, 355 U.S. 41, 46 (1957), spoke of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief." (Emphasis supplied.) *Twombly* notes that under a "literal reading of *Conley's* 'no set of facts' standard, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S.Ct. at 1968. *Twombly* rejects this literal reading of *Conley* and requires that pleadings state sufficient facts to show not just a possible, but a "plausible" claim of relief. Instead of the 'no set of facts' standard of *Conley*, *Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a " 'reasonably founded hope' that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975).

  B. **Adverse Possession**

 The inquiry must begin with a determination of the exact location of the property Plaintiff seeks to possess. There is some confusion on this matter because Plaintiff does not specify which properties he claims to have adversely possessed. In response to this issue, Defendants note that Victor Giller owns the Comet Bar, located at 124 Henry Street, as well as 136 Henry Street the surface lot west of and adjacent to 124 Henry Street (Dkt. # 10, p. 4). Mr. Giller has owned both properties since 1990, and paid his 2007 property taxes for 136 Henry Street lot (Dkt. # 10, Ex. B). The properties to the east of and adjacent to 124 Henry Street are 116 and 106 Henry Street are owned by the City of Detroit since buying them from the State of

Michigan on June 15, 1979 (Dkt. # 10, Ex. C). Given Plaintiff's lack of precision in identifying which lots he claims to have adversely possessed, Mr. Giller's 2007 tax payments for 136 Henry Street, and the fact that Mr. Giller was not named as a Defendant, it will be assumed that Plaintiff's claims are solely for 116 and 106 Henry Street (hereinafter "the Property").

The second part of the analysis is to determine if a person can acquire an interest in property owned by a municipality through adverse possession in Michigan. In the statue on limitation of actions, section (2) of M.C.L. 600.5821 *State and its political subdivisions* states*:*

> (2) Actions brought by any municipal corporations for the recovery of the possession of any public highway, street, alley, or any other public ground are not subject to the periods of limitations.

This language differs from section (1) of M.C.L. 600.5821 dealing with the state:

> (1) Actions for the recovery of any land where the state is a party are not subject to the periods of limitations, or laches. . . .

Comparing these two sections one might assume that adverse possession is not allowed against the state in any action, but limited as a defense against an action "brought by any municipal corporation." Yet, this section has been read to bar adverse possession claims against a municipality in actions commenced not by the municipality but by a private entity asserting the adverse possession claim. *Adams Outdoor Advertising, Inc. v. Charter Township of Canton*, 269 Mich. App. 365, 375, 711 N.W.2d 391, 398 (Mich. App. 2006).

The next question is whether the lots in question are "public ground " within the meaning fo the statue. *Adams Outdoor Advertising* involved billboards on certain property "located on the north side of Michigan Avenue (US-12) approximately 500 feet east of Canton Center Road." This roadside site was considered "public ground" by the Michigan Court of Appeals under it reading of the statute that "public ground" was to be broadly construed.

8

> the phrase "public ground" is "a broadly construed term used to refer to publicly owned property open to the public for common use" and that the Legislature intended this phrase to be "inclusive." . . . Given the intent of the Legislature to broadly construe the phrase "public ground" to protect municipalities from adverse possession claims, it is logical that the protection covers an area so obviously open and accessible to the public as the property in this case.

Id, 269 Mich. App. at 375. Thus the Township of Canton prevailed against a plaintiff who had 40-plus years of continuous use. The court held that the strip alongside the highway was open to the public for common use without the need for a showing that it ever enjoyed any use by the public. *Id*.

If a small strip of land adjacent to a road was considered public ground, then the Property in this case – an empty lot located in an urban area near to a major league ballpark and theaters – should be considered public ground under section (2) of M.C.L. 600.5821. As such, the Property is immune from adverse possession claims asserted against the municipal corporation of Detroit.

          C.        Standing & Plaintiff's Fifth Amendment Takings Claim

Every litigant in federal court must have standing to satisfy the case or controversy requirement within the meaning of Article III of the Constitution of the United States. Article III of the United States Constitution "confines the federal courts to adjudicating actual 'cases' and controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). "Standing is 'the threshold question in every federal case.'" *Coyne v. America Tobacco Company*, 183 F.3d 488, 494 (6th Cir. 1999) (*citing Warth v. Seldin*, 422 U.S. 490, 498 (1975)). It is Plaintiff's burden to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To do so, Plaintiff must allege facts demonstrating that he is a proper party to seek a judicial resolution of a dispute.. *Renne v. Geary*, 501 U.S. 312, 316 (1991).

In the absence of any property interest in the Property by Plaintiff, his Fifth Amendment claim regarding the Property collapses. If he has not property interest in the property, he cannot claim the City of Detroit deprived him of his property interest in the Property without just compensation under the Fifth and Fourteenth Amendments to the Constitution.

E. Equal Protection

Plaintiff alleges that he was denied equal protection under the law under the Fourteenth Amendment. In support of his claim, he argues that Defendant Prime Parking was not required to adhere to all of the City of Detroit's procedures such as background checks and displaying of licenses as was required of him. Assuming the truth of this allegation, it is insufficient to state a claim under the Fourteenth Amendment. Plaintiff cannot make out a violation of his equal protection rights simply by showing that other persons or entities were treated differently. Rather Plaintiff must allege that the disparate treatment was based on discriminatory animus or his being a member of a suspect class. *See Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992). Being "victimized because of some suspect classification . . . is an essential element of an equal protection claim." *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir.1988). This is not the case here. Thus, it is recommended that Plaintiff's Equal Protection claim be **DISMISSED.**

Plaintiff in Count V of his complaint alleges that the Defendants made an illegal agreement or agreed to do an illegal act or agreed to do a legal act in an illegal manner, which is understood by this court to allege a violation of his constitutional rights protected under 42 U.S.C. § 1985. In order to state a claim under §1985, the plaintiff must allege that the defendants:

(1) conspired together;

(2) for the purposes of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws;

(3) and committed an act in furtherance of the conspiracy;

(4) which caused injury to person or property, or deprivation of any right or privilege of a citizen of the United States; and,

(5) that the conspiracy was motivated by racial, or other class-based invidiously discriminatory animus.

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03; 91 S.Ct. 1790, 1798-99; 29 L.Ed.2d 338 (1971).

As has been stated before, Plaintiff does not have any interest in the Property, as such he cannot state a claim under Section 1985. Second, Plaintiff has not alleged, nor is there any indication of, the existence of a conspiracy to deprive him of his constitutional rights based on gender, race or class-based discrimination. Finally, Plaintiff has not alleged facts indicating the City acted in an illegal manner. Therefore it is recommended that Plaintiff's claim under Section 1985 be **DISMISSED**.

G. Racketeering

Count VI appears to allege a violation of the Racketeer Influenced and Corrupt Organizations Act (R.I.C.O.) under 18 U.S.C. §1961 et. seq. §1962 makes it unlawful for an individual "employed or associated with an enterprise" engaged in activities relating to interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962. In addition to providing criminal penalties for certain racketeering activities, R.I.C.O. provides a civil private right of action and treble damages for "[a]ny person injured in his business or property by

11

reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c), *Brown v. Cassens Transportation Co.*, 492 F.3d 640 (6th Cir. 2007).

To prove a violation of § 1962, a plaintiff must allege in the complaint and then prove (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479; 105 S. Ct. 3275; 87 L.Ed.2d 346 (1985). "[P]laintiffs must show (1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." *Van Den Broeck v. Common Point Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000).

Plaintiff's pleadings fail to allege the necessary elements to support a claim for a R.I.C.O. violation. Plaintiff failed to plead two or more predicate offenses, that an enterprise exists, that a pattern of racketeering activity exists or facts showing continuity/nexus between the enterprise and the pattern of racketeering activity and Plaintiff cannot be injured in his business or property because he has failed to show that he has a legal interest in the Property. Therefore, it is recommended that this claim be dismissed as well.

## IV. RECOMMENDATION

Accordingly, **IT IS RECOMMENDED**, for the reasons stated above, that Plaintiff's motion for a Temporary Restraining Order be **DENIED** and Defendants' Motions to Dismiss be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S.

140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: October 24, 2008                             s/Steven D. Pepe
Ann Arbor, Michigan                                 United States Magistrate Judge



Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on 10/24/08.

                                                    s/Jermaine Creary
                                                    Deputy Clerk