UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY METH,

        Plaintiff,

v.                                                      Case Number 08-11589
                                                    Honorable David M. Lawson
KWAME KILPATRICK, JIMMY ALEBRIA,        Magistrate Judge Steven D. Pepe
ALEBRIA / PRIME PARKING, CITY OF
DETROIT, and DOES 1-9,

        Defendants.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, GRANTING DEFENDANTS' MOTIONS TO DISMISS, AND DISMISSING CASE WITH PREJUDICE

This matter is before the Court on the plaintiff's objections to a report by Magistrate Judge Steven D. Pepe recommending that the plaintiff's motion for a temporary restraining order be denied and the defendants' motions to dismiss be granted. The plaintiff filed a complaint against the defendants raising multiple claims after the City of Detroit removed him from a vacant lot that he allegedly maintained for twenty years. He alleges that the defendants took his property without just compensation, violated the Equal Protection Clause of the Constitution, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The plaintiff filed a motion for a temporary restraining order to undo the City's actions, and the defendants moved for dismissal. The plaintiff never responded to the defendants' motions. Judge Pepe addressed all three of these motions under an order of reference for general case management. On October 24, 2008, Judge Pepe issued his report recommending that the plaintiff's motion for injunctive relief be denied and the defendant's motion to dismiss be granted. The plaintiff filed timely objections. The Court has conducted a *de*

*novo* review of the matter and now concludes that the plaintiff's objections to the report and recommendation lack merit, and the magistrate judge was correct that all the counts of the complaint should be dismissed. Therefore, the Court will overrule the objections, adopt the magistrate judge's recommendation, deny the motion for a temporary restraining order, grant the motions to dismiss, and dismiss the case.

I.

The plaintiff, Billy Meth, filed a complaint alleging that he has "cleaned, fenced, and guarded" certain lots on Henry Street between Park and Clifford Streets in the City of Detroit since 1987. Compl. ¶¶ 11-12. The plaintiff filed an affidavit in support of his motion for a preliminary injunction stating that the property "used to be the city's lots." Meth Aff. [dkt. #4] at ¶ 3; *see also* City Def.s' Resp. to Mot. for TRO [dkt. #10], Ex. C (deed conveying property from the State of Michigan to the City of Detroit on June 15, 1979). Since 2000, the plaintiff has taken advantage of the property's location near Comerica Park, and has charged money for parking cars on the property during Detroit Tigers home games. In order to comply with a City of Detroit ordinance, the plaintiff "secured the necessary felony background checks and displayed the parking lot license/decal/plate, photo ID, and badge then issued to him by the City of Detroit. . . ." Compl. ¶ 14.

In a complaint filed in this Court on April 14, 2008, the plaintiff named as defendants the City of Detroit, the Mayor of Detroit in his official capacity, the Detroit City Council (City Defendants), and Jimmy Alebria and Alebria/Prime Parking(Alebria Defendants). He alleges that the City Defendants intruded on his property, removed his locks, and issued to the Alebria Defendants a license to operate the parking lot "absent the required background checks and waiting

period." *Id.* at ¶ 17. He says that the Alebria Defendants leased the parcels from the City, without any "apparent process followed." *Id.* at ¶¶ 19, 26-27. He alleges that "the 'arrangement' itself is 'the work of Kwame Kilpatrick' is the 'word on the street.'" *Id.* at ¶ 30.

The plaintiff theorizes that he obtained title to the lot through adverse possession. By evicting him from the property, the plaintiff argues, the defendants have effectuated a taking of private property for public use without just compensation. He asks that the Court declare pursuant to 28 U.S.C. § 2201 that he is the owner of the property in fee simple. He also argues that the City Defendants, by not requiring the Alebria Defendants to comply with the city ordinance, have deprived the plaintiff of his Constitution right to equal protection of the law, and therefore he says he is entitled to relief under 42 U.S.C. § 1983 and § 1985. Finally, he claims that the defendants have violated the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq*.

With his complaint, the plaintiff filed a motion for a temporary restraining order and preliminary injunction. The court referred all pretrial matters to Magistrate Judge Pepe. A hearing was scheduled on the motion, but the plaintiff's attorney requested an adjournment because the plaintiff himself refused to attend or cooperate with his counsel. On June 6, 2008, the City Defendants filed a motion to dismiss, and twenty days later the Alebria Defendants filed their own motion to dismiss and joined in the City Defendants' motion. The plaintiff never responded to these motions.

On October 24, 2008, the magistrate judge filed a report recommending that the motions to dismiss be granted and the plaintiff's motion for a temporary restraining order be denied. He found that each of the plaintiff's claims failed as a matter of law. He first concluded that the plaintiff was

complaining about lots at 106 and 116 Henry Street owned by the City, and not the adjacent lots owned by Victor Giller that have been developed into a bar. The plaintiff failed to establish adverse possession because under Michigan law a municipality cannot lose public property through adverse possession. Mich. Comp. Laws § 600.5821(2). Because the plaintiff does not own the property, he lacks standing, and all his other claims then fell like dominoes. His Fifth Amendment claim failed because he does not have an interest in the property and he has not exhausted his state court remedies. The plaintiff's claims for violation of equal protection and for conspiracy under § 1985 failed because he has not alleged that the disparate treatment was based on a protected status. Finally, the plaintiff's racketeering claim failed because he

> failed to plead two or more predicate offenses, that an enterprise exists, that a pattern of racketeering activity exists or facts showing continuity/nexus between the enterprise and the pattern of racketeering activity and Plaintiff cannot be injured in his business or property because he has failed to show that he has a legal interest in the Property.

Rep. & Rec. at 12.

Although the plaintiff failed to respond to the dismissal motions, his attorney did file timely objections to the magistrate judge's recommendation and report. Counsel casts the issue as whether the claim can proceed when the plaintiff absents himself from the proceeding, severing ties with his lawyer. The attorney speculates that the plaintiff must have been scared off by threats made by the defendants.

Turning to more substantive objections, the plaintiff's attorney argues that the city must bring a legal action to evict him, and until it does so the plaintiff retains a right in the property. He also contends that perhaps the city owns even the property the magistrate judge believed is owned by Giller.

Turning to the magistrate judge's conclusion regarding equal protection, the plaintiff's counsel offers an objection that indulges wanton speculation:

> Meth is white, older, from a mixed Jewish - Christian heritage. Kwame Kilpatrick and his sidekick [the guy (city's ordinance officer? / Greg Eaton? / selective enforcer of ordinances?)] who rides with Alebria to inspect parking lots during the time the lots provide parking for professional sports patrons] are black, younger apparently Christian. Alebria / Eaton is/are thought to be Kwame Kilpatrick's "Godfather". It is unclear whether this designation has anything to do with religion or is merely some perceived or rumored mafia family status.

Obj. at 9-10. And, objecting to the magistrate judge's conclusion that the RICO is baseless, the plaintiff's counsel writes:

> The ejection ("conduct") from the two adjoining lots Meth adversely possessed illustrates two or more actions (a "pattern of two or more predicate offenses" and a "nexus between the pattern and the injury") by the collaborative/combination/Calebrias of the city/Kilpatrick and Prime Parking/Alebria. Defendants are working the lots in some sort of contractual relationship ("enterprise") with one another. Meth has been injured as a result.

Obj. at 10.

## II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ---, 127 S. Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds upon which it rests. *Twombly*, 127 S.Ct. at 1964. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

A. The property claims

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that private property shall not 'be taken for public use, without just compensation.'" *D.A.B.E., Inc. v. City of Toledo*, 393 F.3d 692, 695 (6th Cir. 2005) (quoting Const., amend. V). In order to prevail on a takings claim, the plaintiff must "first demonstrate that [he has] a legally cognizable property interest." *McCarthy v. Middle Tennessee Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006). "'To have a property interest . . . , a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Ibid.* (quoting *Hamby v. Neel*, 368 F.3d 549, 557 (6th Cir. 2004)). Property interests "are not created by the Constitution" but rather are "defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

The plaintiff's claim for taking is premised on his belief that he could acquire a legal interest in the property through adverse possession under Michigan law. Indeed, state law provides that "[a] party may lose title to real property when another claims ownership . . . through visible, open, notorious, hostile, and continuous possession of the premises for the statutory period." *Adams v. Adams*, 276 Mich. App. 704, 719-20, 742 N.W.2d 399, 408 (2007). In Michigan, the statutory period is fifteen years. Mich. Comp. Laws § 600.5801(4); Mich. Comp. Laws § 600.5821(1). However, at common law, courts subscribed to the doctrine of *quod nullum tempus occurrit regi*, or "time does not run against the King." *BP America Production Co. v. Burton*, 549 U.S. 84, 96 (2006) (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132 (1938)). This common law rule was incorporated into Michigan jurisprudence, although its justification no longer rests on

divine notions of sovereignty, but rather is "found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *City of Detroit v. 19675 Hasse*, 258 Mich. App. 438, 445, 671 N.W.2d 150, 160 (2003). The rule has been codified as an exception to the period of limitations for ejection actions: "Actions brought by any municipal corporations for the recovery of the possession of any public highway, street, alley, or any other public ground are not subject to the periods of limitations." Mich. Comp. Laws § 600.5821(2); *Adams Outdoor Advertising, Inc., v. Charter Township of Canton*, 269 Mich. App. 365, 370; 711 N.W.2d 391, 395 (2006) (noting that this provision "precludes a party from claiming adverse possession against a municipal corporation").

Here, there is no dispute that the City of Detroit is a municipal corporation. *See Weaver v. City of Detroit*, 252 Mich. App. 239, 243, 651 N.W.2d 482, 485 (2002). The plaintiff's own filings acknowledge that the city "used to" own the property until he purportedly adversely possessed it. Meth Aff. at ¶ 3. Because the plaintiff has not obtained – and indeed can never obtain – title to the property from the city, the plaintiff does not have any legally cognizable interest in the property. His taking claim therefore must fail, and he cannot be declared the rightful owner of the land as a matter of law.

To the extent that the plaintiff's complaint can be read to bring a procedural due process claim, that must fail as well. As is true for taking claims, "[i]n resolving [a] procedural due process claim, the first issue is whether the [plaintiff was] deprived of a property interest. Property rights are created and defined not by the Constitution but by independent sources such as state law." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (citing *Thomas v. Cohen*, 304

F.3d 563, 576 (6th Cir. 2002)). As noted above, the plaintiff has not established any property interest of which he could be deprived. Therefore, any such claim must fail as well.

B. Violation of 42 U.S.C. § 1985

"To succeed in establishing a § 1985(3) claim, the plaintiff must demonstrate '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). In addition, to prevail on a section 1985 claim "there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (holding that "[t]he plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such as race").

The plaintiff's complaint is devoid of any allegation of class-based motivation on the part of the defendants. In fact, the first reference to race is the farcical speculation made by the plaintiff's attorney in his objections, quoted above. This claim was not made in the complaint or in any filing leading up to the magistrate judge's report and recommendation, so it is untimely. *See Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000) ("Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 et seq., permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court

stage new arguments or issues that were not presented to the magistrate."). It also is insufficient. No claim is made that race or religion motivated any of the defendants's conduct. The plaintiff's objections to the magistrate judge's conclusion regarding § 1985 therefore will be overruled.

C. Violation of Equal Protection Clause

"It is axiomatic that the Equal Protection Clause protects citizens from [arbitrary] police action" including the selective enforcement of municipal ordinances based on discriminatory animus. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997)). The Sixth Circuit has explained that in order to make out a case of selective enforcement, the plaintiff "must establish that the challenged police action 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Ibid.* (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Discriminatory effect may be evidenced by "showing similarly situated individuals . . . were treated differently through statistical evidence or identifying a person of another [class] who[m] the police treated differently." *Ibid.* A plaintiff may demonstrate discriminatory purpose by offering "evidence that an official chose to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Ibid.* (internal citations and quotation marks omitted).

"The Equal Protection Clause of the Fourteenth Amendment commands that 'no State shall deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Pyler v. Doe*, 457 U.S. 202, 216 (1982)). The plaintiff must "allege . . . specific examples of *similarly situated* individuals." *Braun v. Ann Arbor Charter*

*Tp.*, 519 F.3d 564, 575 (6th Cir. 2008) (emphasis in original). Here, the plaintiff and the Alebria Defendants are similar in that each run a parking lot on the same property. Yet while the plaintiff used the property as a squatter, the Alebria Defendants secured a lease from the City to use the land in this manner. The plaintiff has not alleged facts showing that he is, in fact, similarly situated to anyone to whom the city's ordinances have not been applied.

### D. RICO

To state a claim under RICO, the plaintiff "must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). He "must allege that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Ibid.* The statute authorizes "[a]ny person injured in his business or property" by a RICO violation to file a civil suit seeking treble damages. 18 U.S.C. § 1964(c).

In his objections, the plaintiff's counsel asserts that the plaintiff's ejection from his lots constitutes "racketeering activity." Obj. at 10. Racketeering activity is defined in the statute as acts that constitute violation of enumerated criminal laws. The plaintiff has failed to explain how his ejection qualifies as racketeering activity, and the Court cannot discern how it is either. This objection is frivolous.

### III.

The Court has considered the defendants' motion to dismiss *de novo* following the magistrate judge's report and the plaintiff's objections. The objections lack merit. The Court finds that the magistrate judge properly applied the governing law. The Court will dismiss the case.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #25] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections [dkt #26] to the report and recommendation are **OVERRULED**.

It is further **ORDERED** that the motions to dismiss by all defendants [dkt #22, 23] are **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for a temporary restraining order [dkt #2] is **DENIED**.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 20, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 20, 2008.

s/Susan K Pinkowski
SUSAN K. PINKOWSKI